**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHN A. ANDREWS,

    Plaintiff,

v.                                    Case No. 3:15-cv-881-J-32JRK

D. MOORE and C. BARRETT,

    Defendants.

## ORDER

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights Complaint (Doc. 1) (Complaint), pursuant to 42 U.S.C. § 1983. Plaintiff alleges Defendants, D. Moore and C. Barrett, Chaplains at Hamilton Correctional Institution, violated his First Amendment right to freely exercise his religion when he was temporarily suspended from the Religious Diet Program (RDP). Complaint at 5-6.

Before the Court is Defendants' Motion for Summary Judgment (Doc. 30) (Motion), including exhibits (Def. Ex.). The Court previously advised Plaintiff of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion for summary judgment may foreclose subsequent litigation on the matter, and gave him an opportunity to file a response to Defendants' Motion. See Order (Doc. 11). Plaintiff filed a Response to Defendants' Motion for Summary Judgment (Doc. 36) (Response), including exhibits (Pl. Ex.). Plaintiff also filed a "Truth Affidavit" in support of his Response (Doc. 35) (Pl. Affidavit). The Motion is ripe for review.

## I. Summary of Parties' Positions & Relevant Facts

### A.   Plaintiff's Sworn Allegations[1] and Exhibits

According to Plaintiff, on April 9, 2015, Defendants Moore and Barrett suspended him from the RDP "with no facts or proof," other than to state that Plaintiff was unable to manage his religious diet "consistent with institution safety or security." Complaint at 5. Plaintiff alleges he is a Messianic Jew who keeps kosher and believes non-kosher, unclean foods damage his physical and spiritual well-being. Id. at 6. Plaintiff supports his Complaint with exhibits. The first contains the first page of the RDP procedures and seven letters he received from legal offices declining to represent him in this action (Doc. 1-1) (Compl. Ex. 1). The second contains a Notice of Violation, dated April 9, 2015, signed by Defendant Barrett, and various grievances he filed, with responses, following his suspension (Doc. 1-2) (Compl. Ex. 2). As relief, Plaintiff seeks compensatory and punitive damages. Complaint at 6-7.

### B.   Defendants' Motion and Exhibits

Defendants argue that "the undisputed facts . . . demonstrate that Plaintiff was suspended from the religious diet program after he was found to be improperly possessing food from the chow hall." Motion at 4. Defendants support their Motion with department forms documenting the suspension, unsworn declarations, and Plaintiff's deposition testimony (Motion Exs.).[2] According to the Department

---

[1] The Court credits the specific facts pled in Plaintiff's sworn Complaint when considering the summary judgment Motion. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014).

[2] In their Motion, Defendants reference exhibits A through G. Exhibit A is Plaintiff's "face sheet," which has no relevance to this Motion. Exhibit F did not bear the exhibit

Corrective Consultation form, dated April 8, 2015, P. Whitmer held a corrective consultation with Plaintiff because Plaintiff "was in possession of butter, jelly and salad dressing brought out of the chow hall from CFO menu" (Doc. 30-2) (Motion Ex. B). Whitmer noted in the line for the "inmate's signature" that Plaintiff refused to sign the form. According to the department stamp on the form, it was received on April 9, 2015.[3] See Motion Ex. B.

The unsworn declarations are provided by Defendant Moore (Doc. 30-6) (Motion Ex. F), Defendant Barrett (Doc. 30-5) (Motion Ex. E), and Barrow Beauchamp, Director of the RDP (Doc. 30-4) (Motion Ex. D). Beauchamp, citing the RDP procedures, states that Plaintiff "was found to be leaving the chow hall with food in his possession, which is a violation of the rules covering all inmates . . . . Inmates are not allowed to leave the chow hall with any food they have received due to concerns that the food will then be bartered or sold which creates a multitude of concerns." Motion. Ex. D at 1.

The RDP procedures, attached in support of Beauchamp's declaration, see Notice of Filing (Docs. 31; 31-1) (RDP Procedures), provide that "[i]t is the policy of the

---

"stamp" identifying it as such, as did the other exhibits. Exhibit G was not attached. According to Defendants' Motion, however, Exhibit G is a copy of Plaintiff's grievance dated April 13, 2015, which Plaintiff provided in support of his Complaint. Thus, the Court, when citing that grievance, will cite Plaintiff's Compl. Ex. B.

[3] Plaintiff claims that Defendants did not have the Corrective Consultation form at the time of the suspension, stating that it materialized two years later. See Response at 8-9. In his Affidavit, Plaintiff claims the form first materialized more than a year later. Pl. Affidavit at 1. These assertions, while internally inconsistent, are also contradicted by the form itself, which bears a date stamp of April 9, 2015, as the date received by the Hamilton Correctional Institution.

3

Department of Corrections to afford inmates a reasonable opportunity to observe their religious diet preferences by offering a RDP within the constraints of budget limitations and the security and orderly running of Department of Corrections' institutions in accordance with this procedure." RDP Procedures at 2. The RDP provides three options: (1) a no-meat alternative; (2) a vegan alternative; and (3) a religious diet alternative, which "accommodates religious diet needs through prepackaged meals and/or prepackaged food items," referred to as the CFO (certified food option). Id.

Inmates who participate in the CFO are held accountable for adhering to the religious diet menu. They are not permitted to purchase, possess, or consume food items not consistent with the CFO standards, "regardless of the source of the food." Id. at 5. Disciplinary action, including suspension, will result from bartering with CFO food items and for the unauthorized "possession of CFO food items or CFO supplies." Id. The procedures further provide that "[i]nmates participating in the CFO will be prohibited from consuming food from the regular food line, other special diets, or any food item from the canteen that is not certified Kosher." Id. Non-compliance with the RDP results in a "Notice of Violation," which must be sent to the inmate for an opportunity to respond.[4] The Chaplain then makes a determination whether the inmate should be suspended or counseled depending on the circumstances. Id. at 6.

In their unsworn declarations, Defendants and Beauchamp assert that

---

[4] Plaintiff did not respond to the Notice of Violation. See Motion Ex. C. The section in which an inmate is permitted to provide "facts for consideration" is blank.

4

Plaintiff's suspension was valid, though they acknowledge that Barrett did not correctly complete the Notice of Violation form (Doc. 30-3) (Motion Ex. C), resulting in a "technical error" that allowed Plaintiff to successfully appeal the suspension. See Motion Exs. D, E, F. The Notice of Violation form includes three potential reasons for suspension from the RDP. See Motion Ex. C. The staff member completing the form must "check" the appropriate reason. The Notice of Violation form indicated Plaintiff was suspended because he was "unable to manage the religious diet in a manner consistent with institutional safety or security." See Motion Ex. C. In this instance, Defendants acknowledge Barrett should have indicated Plaintiff was suspended because he had "been found to have bartered, stolen, or improperly possessed food from the CFO meals." See Motion Exs. D, E, F. Defendants and Beauchamp also concede Part D of the form should have included "further details" supporting the reason for the suspension. See id. They all maintain Plaintiff's "suspension was overturned only because of the technical errors found on the suspension notice." See id.

Defendants also assert that a grievance Plaintiff submitted in support of his Complaint confirms the legitimacy of his violation and suspension. See Motion at 4; Compl. Ex. B at 17. In that grievance, dated April 13, 2015, Plaintiff did not deny he violated the RDP. Rather, he disagreed with the Department's policy that resulted in a suspension from the program, maintaining that the religious diet program is a right, not a privilege. Compl. Ex. B at 17. While admittedly somewhat difficult to decipher, it appears Plaintiff disagreed with the characterization that he was suspended because he was unable to manage his religious diet when he was actually suspended

5

after he was "patted down coming out of the chow hall." See id. He stated that the "one does not have anything to do with the other." See id. Plaintiff's grievance was denied with an explanation that the CFO is a not a right but a privilege, and Plaintiff signed up for it understanding that a violation can result in suspension.[5]

Defendants argue Plaintiff is not entitled to compensatory or punitive damages because he has not sustained a physical injury, relying on Plaintiff's deposition testimony that his injury is spiritual rather than physical. Motion at 8-9; Motion Ex. H at 5-6. Defendants assert that Plaintiff is not entitled to nominal damages because he did not request them, and they maintain they are protected by qualified immunity. Motion at 9, 10. Defendant Moore seeks summary judgment in his favor because he was not personally involved in Plaintiff's suspension and Plaintiff has sued him solely with respect to his role as a supervisor. Id. at 5-6.

### C. Plaintiff's Response

In his Response, Plaintiff states that he does not confess "to taking CFO food out of the chow hall, but just having condiments in [his] cell." See Response at 2. In further explanation, he provides:

> Now the Plaintiff is going to explain how I came to possess the condiments which are not exclusive to CFO. Butter, Jelly, and Salad dressing are common possessions. I do not have to take a risk of bringing anything out from C.F.O. Condiment's [sic] are widely available at Hamilton Correctional Institution, through canteen, regular chow hall as well as C.F.O. The origins of the condiments in question has never been proven to be ascertained. Where is the proof that these condiments were in fact C.F.O. condiments, there is no reason to assume they originated from C.F.O.

---

[5] The document Plaintiff allegedly signed was not provided.

6

Id.; see also Pl. Affidavit at 2. Plaintiff also attacks the basis of Defendants' evidence, suggesting it is untruthful. First, he maintains the three unsworn declarations are false because the declarants state that the facts are "personally known" to them. Response at 2. According to Plaintiff, these statements must be false because the declarants, including Defendants, "were not involved at the time of the incident," so they cannot have "personal knowledge of the facts." Id. Second, Plaintiff suggests the Corrective Consultation form is falsified. He states he did not receive this form at the time of the incident or the suspension, and he states the Defendants similarly did not have the form upon which to base the suspension. Id. at 8. Plaintiff suggests the form was created after-the-fact to justify the suspension. See id. at 4, 9. He also asserts the form does not actually prove he took food out of the chow hall. Id. at 2. Notably, however, in his Response, Plaintiff states that "C.O.P. Witmer gave [him the corrective consultation] while conducting a cell search, not coming out of the chow hall." Id. at 1.

In response to Defendant Moore's supervisory liability argument, Plaintiff states that Moore, as the supervisor, was responsible for ensuring his subordinates "do not violate any of the rights that are granted by the constitution." Id. at 4-5. Plaintiff states the following: "Senior Chaplain D. Moore being the head Chaplain of both Hamilton main unit as well as the annex . . . cannot honestly state that he did not know or even participate in the Plaintiff's suspension." Id. at 8. See also Pl. Affidavit at 1. Plaintiff provides three documents (in two exhibits), in support of his Response: the Corrective Consultation form, the Department of Corrections Statement on Employee Conduct (citing Florida Statutes, which prohibits untruthful

7

statements), and a grievance dated May 10, 2015 with the reply dated May 19, 2015 (Docs. 36-1; 3-2) (Response Ex.). In the grievance, submitted after his appeal was granted, Plaintiff asked why he had not yet been placed back on the CFO diet. Response Ex. B at 2. The response indicated he would return to the CFO after the waiting period and further stated that he "should have been violated [and he] basically got away with it." Id.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). When ruling on a motion for summary judgment, a court is required to "pierce the pleadings and [to] assess the proof" to determine whether the non-moving party has presented specific facts to proceed to trial. Id. at 587. Any inferences to be drawn from the facts presented by the parties "must be viewed in the light most favorable" to the non-moving party. Id. at 588. "Although the existence of a genuine issue of material fact precludes judgment as a matter of law, a jury question does not exist because of the presence of a mere scintilla of evidence." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal quotations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

8

the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).

### III. Law and Conclusions

#### A. Claims Against Defendant Moore

A successful claim under 42 U.S.C. § 1983 requires a plaintiff to "demonstrate both (1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (alteration in original). Moreover, the Eleventh Circuit requires that a plaintiff provide "proof of an affirmative causal connection" between the particular defendant's alleged acts and the asserted constitutional violation. Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." Zatler, 802 F.2d at 401.

Defendant Moore asserts there are no facts describing how he personally participated in the acts giving rise to the alleged constitutional violation, and Plaintiff has conceded as much. Indeed, in his Response, Plaintiff attacked the validity of Moore's declaration, stating that Moore had no knowledge of the facts because Moore was "not involved at the time of the incident." Response at 2. The Eleventh Circuit has made clear that § 1983 claims against state agents may not be based a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801

9

(11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior). See also Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) (affirming summary judgment in favor of a defendant sued "only in his supervisory capacity" because the plaintiff made no allegations that the defendant participated in the action or that he was causally responsible for any violations).

"Supervisory liability can be found when the supervisor personally participates in the alleged constitutional violation, or when there is a causal connection between the supervisory actions and the alleged deprivation." Id. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds). Not only does Plaintiff acknowledge that Defendant Moore had no personal involvement with respect to the incident, Plaintiff's Response evidences that he pursues a claim against Defendant Moore purely as a result of his role as Senior Chaplain (a supervisor). See Response at 4-6, 8. Specifically, Plaintiff states that Defendant Moore should be liable "as a direct result of him being the supervisor with the mismanagement of his subordinates [sic] training." Id. at 5. In his Affidavit, Plaintiff assigns fault on the part of Defendant Moore solely in his role as Defendant Barrett's supervisor. See Pl. Affidavit at 1.

Plaintiff does not attribute any actual violation to Defendant Moore individually, nor does he provide any evidence of a "history of widespread abuse" that would suggest a policy of such abuse. See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th

10

Cir. 2003). Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Plaintiff offers no evidence to rebut Defendant Moore's argument; therefore, Defendant Moore has carried his burden establishing no genuine issue of material fact with respect to the claims against him.[6] Defendant Moore is, thus, entitled to summary judgment in his favor as to all claims.

### B. Claims Against Defendant Barrett

Plaintiff maintains Defendant Barrett violated his First Amendment right to

---

[6] Plaintiff appears to suggest that his suspension was the result of animus by Defendant Moore. In support of this suggestion, Plaintiff refers to a grievance he provided with his Response. See Response Ex. B at 2. Plaintiff submitted a grievance dated May 10, 2015, asking to be placed back on the RDP after his appeal was approved on May 4, 2015. In response to the grievance, on May 15, 2015, Defendant Moore wrote that Plaintiff "should have been violated [and he] basically got away with it." Moore further wrote that Plaintiff had been reinstated, but there was a waiting period. Id. To the extent this comment by Defendant Moore is suggestive of anything, it suggests Moore was referencing his disagreement with the appeal favoring Plaintiff even though Plaintiff actually violated the RDP procedures, as confirmed by Defendants' and Beauchamp's declarations. See Motion Exs. D, E, F. No reasonable jury could interpret Moore's statement as animus toward Plaintiff or as action attributable to Moore with regard to Plaintiff's suspension, which occurred more than a month prior to this written comment by Defendant Moore. Even more, no reasonable jury could find that Defendant Moore's statement, in response to a grievance, supports Plaintiff's unsupported, fantastical conclusion that the Corrective Consultation form was created years after the fact. There is absolutely no evidence in the record to support that conclusion. Indeed, the date stamp on the Corrective Consultation form bears the date of the suspension, April 9, 2015, and Plaintiff does not dispute he was found with food (condiments) on the day in question. Furthermore, Plaintiff's own statement in his Response contradicts his claim: He specifically recognizes that Whitmer "gave" him a corrective consultation during a "cell search," even if it did not occur while he was "coming out of the chow hall." Response at 1.

11

freely exercise his religion when Barrett suspended him from the RDP without justification. Plaintiff challenges the underlying facts and the procedures in place that resulted in his suspension, including the inaccurate and incomplete Notice of Violation. See Response at 4. Plaintiff essentially asks this Court to sit in review of the decision-makers who imposed an administrative suspension in accordance with internal department policies and procedures. Inmates, however, do not have a constitutional right to specific prison grievance procedures. See Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (recognizing prisoners have no constitutionally-protected interest in prison grievance procedures). The Supreme Court further mandates a deferential review of prison procedures when there is a logical connection between a questioned policy and legitimate penological concerns. See Turner, 482 U.S. at 89-90 ("[S]uch a standard is necessary 'if prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations.'") (alteration in original). Even more, the grievance process Plaintiff employed following his suspension resulted in a favorable outcome for him. See Compl. Ex. B at 18.

While Plaintiff has offered various reasons he disputes his suspension, he does not consistently question whether the RDP suspension policy itself violates his right to freely exercise his religion (even though he suggested such a disagreement in his April 13 grievance). Indeed, Plaintiff concedes that he was fairly suspended when he admittedly took religious diet food (sardines) out of the kitchen on a different

12

occasion.[7] See id.; Motion Ex. H at 9. The closest Plaintiff comes to substantively objecting to the suspension procedures is when he says "Defendants have caused me to back slide and violate my religious beliefs as both being chaplains they are well aware of the spiritual significances [sic] of the kosher meal." Response at 7.

A defendant sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Defendant Barrett, as a Chaplain, was unquestionably exercising a discretionary action at the time he signed the Notice of Violation resulting in Plaintiff's suspension from the RDP. See RDP Procedures at 5-6. Moreover, Plaintiff does not dispute that Barrett had the authority to review inmate compliance with the RDP and impose appropriate sanctions for legitimate violations. See Response at 4.

Once a court is satisfied the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate that defendant is not entitled to a qualified immunity defense. Coley v. Smith, 441 F. App'x 627628 (11th Cir. 2011) (citing Bryant v. Jones, 575 F.3d 1281, 1294 (11th Cir. 2009)). The Eleventh Circuit follows a two-step inquiry in determining whether an individual defendant is entitled to qualified immunity: (1) whether plaintiff suffered a constitutional violation; and (2) if so, whether the constitutional right violated was "clearly established." Davila

---

[7] This incident occurred after the one involved in this litigation. Plaintiff testified in deposition that, after his suspension term of thirty days, he timely requested to be, and was, reinstated in the program. Motion Ex. H at 10.

v. Gladden, 777 F.3d 1198, 1210-11 (11th Cir. 2015). Courts may exercise discretion to address the two steps in either order. Id. at 1211. Exercising that discretion, the Court will address whether the right Plaintiff implicates is clearly-established.

Temporary suspension from a religious diet program, which results in reinstatement after the period of suspension, does not result in the violation of a clearly-established constitutional right in this jurisdiction. In this regard, Plaintiff has not presented any binding precedent to overcome Defendant Barrett's entitlement to qualified immunity. Indeed, the only response Plaintiff asserts to Defendants' qualified immunity defense is that "Defendants are both plainly and wholly incompetent to perform in a manner as to not clearly violate established statutory constitutional rights, which any reasonable chaplain knows." Response at 8. "A 'clearly established' right is one whose contours are fixed 'so clearly that a reasonable official would have understood his acts were unlawful.'" Coley v. Smith, 441 F. App'x 627, 628 (11th Cir. 2011).

> 'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). This Court has observed that "[a] government-officer defendant is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compels, the conclusion for all reasonable similarly situated public officials that what [a] Defendant was doing violated [a] Plaintiff's federal rights in the circumstances." Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1030–31 (11th Cir.2001) (en banc) (alteration adopted) (quotation marks omitted), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Davila, 777 F.3d at 1211.

The Eleventh Circuit has not addressed the specific constitutional right implicated by Plaintiff's claim. To be clear, Plaintiff does not assert that his right to receive a religious diet in the first instance was denied. Rather, Plaintiff argues that temporarily suspending him from the RDP for a violation of the RDP procedures, where he was either improperly accused or the internal suspension form was invalid, amounts to a constitutional violation.[8] See Response at 7. Plaintiff cites decisions of other circuits[9] in support of his claim that the suspension has resulted in a substantial burden on his religious practice. See id. This argument and the cases cited in support, however, are misplaced in the context of Plaintiff's First Amendment claim. Rather, the cases Plaintiff cites analyze the 'substantial burden' test in the context of a claim brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which applies a strict scrutiny approach in religious exercise claims. See Holt v. Hobbs, 135 S. Ct. 853, 859-60 (2015).

When determining whether a right is clearly established, this Court is bound by precedents of the Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida. See Coley v. Smith, 441 F. App'x 627, 628–29 (11th Cir. 2011) (quoting Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n. 4 (11th Cir.1997) (en banc)). None of these courts have held that temporary suspension from a religious

---

[8] Plaintiff requested compensatory damages in the amount of $2,000 per day he was forced to eat the main line food and "defile [his] body." See Complaint at 7.

[9] See Response at 7 (citing Washington v. Klem, 497 F.3d 272, 278 (3d Cir. 2007); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) Adkins v. Kasper, 393 F.3d 559, 570 (5th Cir. 2004)).

15

diet program is unconstitutional when the inmate is aware of the sanctions for a violation[10] and those sanctions were designed to address concerns[11] related to security and orderly running of the institution. See RDP Procedures at 2; see Motion Ex. D at 1. The Eleventh Circuit has come close to considering the issue in the context of a RLUIPA claim. See United States v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1223, 1229-30 (11th Cir. 2015) (dismissing as moot an appeal of a preliminary injunction entered in favor of the United States in a case where it questioned the validity of the "zero tolerance rule" of the RDP, finding the injunction order did not comply with the Prison Litigation Reform Act criteria).[12]

At least one circuit has rejected a First Amendment challenge and held that a limited suspension from an approved religious diet program is permissible where the

---

[10] In a grievance response Plaintiff filed in support of his Complaint, an assistant warden stated that Plaintiff knew his conduct violated the RDP because he "signed [a statement] agreeing to comply with the RDP stipulations." Compl. Ex. B at 14. The statement Plaintiff signed is not provided in support of Defendants' Motion. However, Plaintiff offers no evidence that he did not sign the document. Indeed, Plaintiff concedes in his Response that his suspension subsequent to the instant one was legitimate, see Response at 4, and he recognized in his deposition that while he "does not remember reading the rules," he knows suspension "happens" when an inmate violates the policy prohibiting food removal from the dining hall. Motion Ex. H at 9.

[11] Defendants did not argue, and this Court does not decide, whether, in this instance, the suspension procedures are reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89-91 (1987). According to Beauchamp's Declaration and the RDP procedures, the suspension policy is intended to prohibit inmates from leaving the "chow hall with any food they have received due to concerns that the food will then be bartered or sold which creates a multitude of concerns." The specific "concerns" are not explained either by Beauchamp or in Defendants' Motion. See Motion Ex. D at 1; Motion at 5, 11-12. The RDP procedures do, however, reference generalized concerns related to "security and orderly running of the Department of Corrections' institutions." RDP Procedures at 2.

[12] Plaintiff here has brought only a § 1983 action based on the First Amendment. He has not brought a claim under RLUIPA.

16

inmate violated the program rules. See Brown-El v. Harris, 26 F.3d 68, 69-70 (8th Cir. 1994) (upholding a suspension because "only those worshippers who [chose] to break the fast" were suspended and the plaintiff could not prove he did not violate the relevant policy). See also Daly v. Davis, No. 08-2046, 2009 WL 773880, at *1-2 (7th Cir. 2009) (affirming summary judgment in favor of the defendants on claims brought under both the First Amendment and the Religious Freedom Restoration Act because the plaintiff did not establish his suspension, resulting from his admitted violations of the kosher-diet program rules, substantially burdened his religious exercise). But see Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (reversing the grant of summary judgment in favor of the defendants under both First Amendment and RLUIPA claims because the defendants did not satisfy their burden to identify a legitimate or compelling reason justifying the one-year suspension policy[13]); Kuperman v. Warden, N.H. State Prison, No. 06-cv-420-JL, 2009 WL 4042760, at *2 (D.N.H. 2009) (recognizing a circuit split and suggesting, in dicta, that the constitutionality of the prison's religious diet suspension policy "remain[ed] open to question under the First Amendment and RLUIPA").

To the extent Plaintiff challenges the RDP procedures requiring temporary suspension for a one-time violation, Plaintiff has failed to demonstrate the violation of a clearly-established First Amendment right. Therefore, Defendant Barrett is

---

[13] With respect to the First Amendment claim in Carter, the defendants failed to identify a legitimate penological objective. With respect to the RLUIPA claim, providing heightened protection for religious inmates, the defendants failed to identify a compelling governmental interest.

protected by qualified immunity and entitled to judgment as a matter of law.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**.

2. The Clerk shall enter judgment in favor of Defendants and against Plaintiff and thereafter close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of March, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-6
c: John A. Andrews
Counsel of Record